ROBERTS, J.,
for the Court:
¶ 1. The Madison County Circuit Court affirmed the Madison County County Court’s decision to find David Archie guilty of disorderly conduct and violating the City of Canton, Mississippi’s parade ordinance. The circuit court also affirmed the county court’s decision to sentence Archie to thirty days in the county jail and a $275 fine. Aggrieved, Archie appeals. Canton did not file a reply brief. We take Canton’s failure to file a brief as a confession of error. Accordingly, we reverse the judgment of the circuit court and render judgment for Archie.
FACTS AND PROCEDURAL HISTORY
¶ 2. Archie’s convictions stem from an organized event to protest racial profiling by the Madison County Sheriffs Department. Organizers had publicized the event as an initial rally at Canton’s courthouse square followed by a march of approximately two miles to the Madison County Detention Center and a second rally at that location. On the date of the event-March 27, 2008-the organizers of the event discovered that they did not have the necessary permit from Canton to “march” as required by Canton’s parade ordinance. However, they did obtain appropriate permits from the Madison County Board of Supervisors to conduct the rallies.
¶ 3. According to Nsambi Lambright, Executive Director of the Mississippi ACLU, the organizers of the rally modified their original plan. Lambright testified that participants were informed that there would be no “march” from the courthouse square to the detention center. Instead, those who wished to take part in the second rally would travel there by their own cars or in a van provided by the Mississippi ACLU. Lambright further testified that Robert Winn, Canton’s Chief of Police at the time, did not object to some of the rally participants walking the two miles from the courthouse square to the deten *1281 tion center. Nevertheless, Chief Winn’s permission was conditioned on the premise that participants simply walked rather than “marched.” According to Lambright, Chief Winn “said that as long as we didn’t use the bullhorn, we didn’t have signs[,] and that it didn’t look like a march, ... it would be okay.”
¶ 4. The record contains inconsistent testimony regarding the number of participants at the first rally. Chief Winn testified that fifty or sixty people were there. Lambright estimated that there were between seventy-five and eighty people at the first rally.
¶ 5. Archie’s defense theory is focused on the concept that the “march” to the second rally location was cancelled after organizers realized that they needed a parade permit from Canton. Chief Winn disputed that at trial. According to Chief Winn, Archie said the “march” would continue even if the participants “got locked up.” Lambright testified otherwise. As mentioned, Lambright testified that Chief Winn did not object to the rally participants walking to the second rally location as long as they did not “march.”
¶ 6. Regardless of the characterization, all witnesses agreed that not all of the rally participants walked to the second rally location. It is undisputed that Archie was one of the people who walked. But the record contains inconsistent testimony regarding how many participants walked with Archie. Lambright testified that twenty to twenty-five participants walked to the detention center. R.C. Hendrix testified that he walked next to Archie. According to Hendrix, there were ten to fifteen people behind him. Chief Winn admitted that fewer than the fifty or sixty rally participants had walked to the detention center. However, Chief Winn also testified that the number of people walking gradually increased. According to Chief Winn, by the time the group had walked approximately six blocks, fifty or sixty people were walking with Archie.
¶ 7. Chief Winn also testified that Archie was using a bullhorn and chanting. Chief Winn further testified that people were chanting along with Archie. During cross-examination, Chief Winn clarified that he had not watched the group the entire time they walked. Hendrix testified that Archie was not using the bullhorn because Archie’s nephew was carrying it. Lam-bright testified that no one was using a bullhorn. Lambright also testified that people were carrying signs, but they were merely transporting them to the second rally site instead of displaying them.
¶ 8. Meanwhile, Chief Winn had taken an alternative route to cut off the group. Chief Winn went on to testify as follows:
[Ajfter [the group] left the courthouse square, ... I called all [of] my units ... [,] and we had a short meeting as it relates to what our next proceeding was going to be on how to deal with this type of demonstration or march.... Our initial approach would be to block [the intersection of Liberty Street and Union Street] and warn them that if they cross the intersection ... that they will be subject to arrest. And I told — only then if they failed to comply, then we would ... arrest ... whoever crossed the street....
As the group approached Chief Winn’s perimeter, an officer with the Canton Police Department informed the group that anyone who continued to walk would be subject to arrest. When the group continued to walk forward, officers arrested Archie and thirteen other people for disor *1282 derly conduct. Although Hendrix was walking next to Archie, the Canton police officers did not arrest Hendrix. Archie was also charged with violating Canton’s parade ordinance, although no other participant was charged with that violation.
¶ 9. Archie pled nolo contendere before the Canton Municipal Court and then appealed for a trial de novo before the county court. After a trial without a jury, the county court found Archie guilty of both offenses, fined him a total of $275, and sentenced him to thirty days in the county jail. However, the county court suspended Archie’s sentence and placed him on unsupervised probation for two years. Archie appealed to the Madison County Circuit Court, which adopted the county court’s opinion and affirmed Archie’s convictions and sentences. Aggrieved, Archie appeals.
ANALYSIS
¶ 10. The City of Canton did not file a brief. Under these circumstances, the following framework applies:
[T]his Court has two options. First, we may take the appellee’s failure to file a brief as a confession of error and reverse. This option is favored when the record is complicated or of large volume and the case has been thoroughly briefed by the appellant with apt and applicable citation of authority so that the brief makes out an apparent case of error. However, if the record can be conveniently examined and such examination reveals a sound and unmistakable basis or ground upon which the judgment may be safely affirmed, we may disregard the appellee’s error and affirm.
Thornton v. Holloway, 49 So.3d 125, 128-29 (¶ 10) (Miss.Ct.App.2010) (internal citations and quotations omitted).
¶ 11. The record is not large, but Archie’s challenge to the constitutionality of his convictions and Canton’s parade ordinance is certainly a complicated question. Canton Ordinance Code section 22-67 provides that “[i]t shall be unlawful for any person to organize or hold or participate in any parade, meeting, assembly!),] or procession of persons and[/]or vehicles on the streets or sidewalks of this city unless such activity shall have first been authorized by a written permit.” The ordinance does not define the terms “parade, meeting, assembly!),] or procession.” According to Chief Winn, the ordinance gave him complete discretion regarding whether a group of walking people qualified as a “gathering of people or [a] march.” Chief Winn also testified that it would not be illegal for two people to walk down the street, but only so long as “they’re not marching for a certain purpose.” Chief Winn went on to testify that it is irrelevant whether the organizers called off the march because the event had been publicized as a rally and a march.
¶ 12. There are serious questions regarding the constitutionality of Canton’s parade ordinance. Archie properly preserved his claims regarding the unconstitutional nature of Canton’s parade ordinance. “The law ... should give fair notice of offending conduct, or else the law is void for vagueness.” Nichols v. City of Gulfport, 589 So.2d 1280, 1282 (Miss.1991). In King v. City of Clarksdale, 186 So.2d 228, 231 (Miss.1966), the Mississippi Supreme Court found a similar ordinance unconstitutional because it “vest[ed] unfettered discretion in the chief of police.” Furthermore, the record in this case contains no indication that Canton’s parade ordinance included a punitive aspect. That is, the ordinance requires a permit before a person may “participate in any parade, meet *1283 ing, assembly!,] or procession of persons and[7]or vehicles on the streets or sidewalks of’ Canton. But the ordinance does not provide a punishment for violation of the ordinance. The record is simply void of any attempt by the city prosecutor to introduce any municipal ordinance that established a punishment or fine for violating Canton’s parade ordinance. What is more, the ordinance prohibits even organizing a prohibited event without first obtaining a permit.
¶ 13. Based on the questions regarding the validity of the ordinance at issue, Archie’s conviction for disorderly conduct is also questionable. Archie was convicted of disorderly conduct under Mississippi Code Annotated section 97-35-7(1) (Rev.2006) because he did not obey Chief Winn’s command prohibiting people from crossing the street in front of the Canton Police Department’s perimeter. Archie reasons that he cannot be convicted of disorderly conduct. “Obviously, ... one cannot be punished for failing to obey the command of an officer if that command is itself viola-tive of the Constitution.” Wright v. Georgia, 373 U.S. 284, 291-92, 83 S.Ct. 1240, 10 L.Ed.2d 349 (1963).
¶ 14. Suffice it to say, there are serious constitutional issues regarding both of Archie’s convictions. Under the circumstances, Canton’s failure to file a brief operates as a confession of error. We, therefore, reverse the judgment of the circuit court and render judgments of acquittal.
¶ 15. THE JUDGMENT OF THE MADISON COUNTY CIRCUIT COURT IS REVERSED AND RENDERED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, MAXWELL, RUSSELL AND FAIR, JJ., CONCUR. CARLTON, J„ DISSENTS WITHOUT SEPARATE WRITTEN OPINION.