**IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI**

**NO. 2013-CA-02111-COA**

**WILLIAM L. PEEBLES**                                                      **APPELLANT**

**v.**

**SANDRA A. PEEBLES**                                                        **APPELLEE**

DATE OF JUDGMENT:               11/22/2013
TRIAL JUDGE:                    HON. RAY HILLMAN MONTGOMERY
COURT FROM WHICH APPEALED:      LAMAR COUNTY CHANCERY COURT
ATTORNEY FOR APPELLANT:         S. CHRISTOPHER FARRIS
ATTORNEY FOR APPELLEE:          ROBERT R. MARSHALL
NATURE OF THE CASE:             CIVIL - DOMESTIC RELATIONS
TRIAL COURT DISPOSITION:        MOTION FOR SUMMARY JUDGMENT
                                DENIED
DISPOSITION:                    AFFIRMED - 12/09/2014
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE GRIFFIS, P.J., BARNES, ISHEE AND MAXWELL, JJ.**

**MAXWELL, J., FOR THE COURT:**

¶1.     William Peebles appeals a binding consent judgment he entered into with his ex-wife,

Sandra.  He wants to back out of paying Sandra $64,686.60 in past-due house-note payments

and attorney's fees.  While he admitted in the consent judgment he owed Sandra this amount,

on appeal he wants to relitigate whether his obligations to Sandra were discharged by his

bankruptcy.  Though this issue is barred from our review, the law is clear that support

obligations are *not* dischargeable in a chapter 7 bankruptcy.

¶2.     Alternatively, William argues that even if the note obligation was not discharged, he

should get a dollar-for-dollar credit for all benefits Sandra receives from his Social Security.

But William is not entitled to such a credit, since the parties did not agree he would receive one. We thus affirm.

**Facts and Procedural History**

¶3. On March 22, 2004, William and Sandra were granted an irreconcilable-differences divorce. Instead of asking the court to distribute the property, they entered into a property-settlement agreement. According to the PSA, Sandra would get the marital home, and William would execute a quitclaim deed conveying all of his interest in the home to Sandra. The parties also agreed William "shall be responsible" for the "house note[.]" And William was obligated to pay "taxes and insurance," until either the house sold, or Sandra remarried or died. Each party waived the right to seek alimony or make any claims against the retirement income of the other.

¶4. Sandra claimed William stopped paying on the house note. And on June 30, 2011, she filed a contempt action against him for his nonpayment.[1] William responded, asserting Sandra had agreed to relieve him of his house-note obligations for a one-year period after he underwent triple-bypass heart surgery.[2] William also argued that the $708 per month Sandra

---

[1] When the petition was filed, Sandra alleged William was in arrears $25,404.47 through May 2011. In William's answer, he claimed he paid every month in 2011 except September, October, and November.

[2] Sandra's responded to William's answer, insisting there "was no agreement for [William] not to make the payments then or now and [William] was not 'relieved of payments' by Sandra nor was any order entered or sought to that effect." But in her response to his summary-judgment motion, Sandra "admits that she waived the monthly payments while [William] was unable to work due to recovering from a heart attack but she did not waive her right to receive the payments at a later date."

2

began withdrawing from his Social Security should offset his missed payments on the house note. As William sees it, he should actually get a monthly credit of around $60 since the house note was $647.33 per month. He also raised an inability-to-pay defense.

¶5. On June 12, 2012, William filed for chapter 7 bankruptcy and sought to discharge his debt owed to Sandra. Under Schedule "E" of William's bankruptcy petition—which is entitled "Creditors Holding Unsecured Priority Claims"[3]—he had listed Sandra as a creditor for a "domestic support obligation ($640.00 per month)," and the total amount was listed as $33,084.47. The deadline for Sandra to object to the debtor's discharge was September 24, 2012. And from the record it appears the deadline passed without Sandra objecting.

¶6. On October 9, 2012, William was "granted a discharge under section 727 of title 11, United States Code . . . (the Bankruptcy Code)." Though the order did not specify which debts were actually discharged, it made clear: "Some of the common types of debts which are <u>not</u> discharged in a chapter 7 bankruptcy case are: . . . Debts that are domestic support obligations[.]"

¶7. On June 14, 2013, William filed for summary judgment in Sandra's contempt action, asserting discharge in bankruptcy, waiver, and res judicata as defenses. He alternatively argued that if the house note was not discharged in bankruptcy, he should get a dollar-for-dollar credit against his monthly house-note obligation for all Social Security benefits paid to Sandra. Sandra disagreed. She insisted that since William's house-note obligation was

---

[3] He also listed attorney Erik M. Lowery as a creditor.

a domestic support obligation, it could not be discharged in bankruptcy.[4]

¶8.     The chancellor held a hearing on William's summary-judgment motion. After hearing from both sides, he found the house note was not dischargeable in bankruptcy. And because the PSA did not mention William receiving a credit if Sandra drew from his Social Security benefits, the chancellor rejected William's offset theory. Thus, he denied William's summary-judgment motion.

¶9.     After this ruling, the parties entered a "consent judgment." Under its terms, William agreed he owed Sandra $54,686.60 for the house note and Medicare supplement costs. He

---

[4] A chapter 7 discharge "does not discharge an individual debtor from any debt . . . for a domestic support obligation[.]" 11 U.S.C. § 523(a)(5) (2012). A "domestic support obligation" is defined as

> a debt that accrues before, on, or after the date of the order for relief in a case under this title, including interest that accrues on that debt as provided under applicable nonbankruptcy law notwithstanding any other provision of this title, that is – (A) owed to or recoverable by – (i) a spouse, former spouse, or child of the debtor or such child's parent, legal guardian, or responsible relative; or (ii) a government unit; (B) **in the nature of alimony, maintenance, or support** (including assistance provided by a governmental unit) **of such spouse, former spouse, or child of the debtor or such child's parent, without regard to whether such debt is expressly so designated**; (C) established or subject to establishment before, on, or after the date of the order for relief in a case under this title, by reason of applicable provision of – (i) a separation agreement, divorce decree, or property settlement agreement; (ii) an order of a court of record; or (iii) a determination made in accordance with applicable nonbankruptcy law by a governmental unit; and (D) not assigned to a nongovernmental entity, unless that obligation is assigned voluntarily by the spouse, former spouse, child of the debtor, or such child's parent, legal guardian, or responsible relative for the purpose of collecting the debt.

11 U.S.C. § 101(14A) (2012) (emphasis added).

4

also agreed to pay $10,000 for Sandra's attorney's fees, for a total of $64,686.60. As part of this judgment, William was ordered to pay $1,000 per month starting November 1, 2013, which represented a $647.33 payment on the house note plus $208.55 in taxes and insurance, totaling $862.33, with the remaining balance to be applied to the judgment. And Sandra agreed to stay execution of the consent judgment as long as William continued to pay the $1,000 per month.

¶10. The consent judgment did, however, give William "the right to seek an appeal from the [c]ourt's pretrial ruling denying his request for credit for the social security payments [Sandra] has been receiving as a result of [William's] contributions into social security." But William did not reserve the right to appeal the judge's finding that his house-note obligations to Sandra were not discharged in bankruptcy.

## Discussion

### I.  House-Note Obligation Was Not Discharged in Bankruptcy

¶11. William's first appellate claim ignores the consent judgment he entered with Sandra and backtracks to his initial suggestion that his house-note obligation was discharged in bankruptcy. We find William's claim is not only barred but also lacks merit.

#### A.  *Consent Judgments Are Binding*

¶12. First, William entered into a consent judgment, conceding he indeed owed Sandra the money on the house note. And consent judgments are "given the same force and effect as[] judgments rendered after litigation." *Smith v. Malouf*, 826 So. 2d 1256, 1259 (¶10) (Miss. 2002). We do note, however, that while consent judgments are "binding and conclusive,

5

operating as res judicata and an estoppel to the same extent as judgments after contest[,]"[5] there are limited grounds for an appeal from a consent judgment. But none of those exceptions are present here.

### B. *Appealability of a Consent Judgment*

¶13. "Until 1991 there was a specific statutory bar to appealing from a consent judgment." *Sanghi v. Sanghi*, 759 So. 2d 1250, 1255 (¶22) (Miss. Ct. App. 2000) (citing Miss. Code Ann. § 11-51-3 (1972) (an appeal may be taken from any judgment that is not "by confession"), amended 1991 Miss. Laws ch. 573, § 79). But "now an appeal can be taken from any judgment other than one by default." *Id.* (citing Miss. Code Ann. § 11-51-3 (Supp. 1999)). To survive the bar against appealing consent judgments, the issues on appeal must be akin to those under Rule 60(b)—claims such as fraud, misrepresentation, accident, or mistake. *Rushing v. Rushing*, 724 So. 2d 911, 915-16 (¶¶19-20) (Miss. 1998). As our supreme court has put it, for a consent judgment to be appealable, "the allegation and indicated evidence should be such as would convince a court that what is sought is not simply an opportunity to litigate that which is already settled." *Id.* at 916 (¶22) (quoting *Askew v. Askew*, 699 So. 2d 515, 520 (Miss. 1997)).

¶14. From our review here, it is obvious that relitigating the discharge issue is William's chief concern. William does not contest the validity of the consent judgment; he simply wants to reargue something he ultimately agreed about—the fact that he owed Sandra

---

[5] *Id.*

6

$54,686.60 on the house note. Had he reserved the right to appeal this issue as he specifically did with his claim he should be credited for Social Security benefits, the bankruptcy issue would be properly before us. But he opted not to preserve it, so we find the bankruptcy-discharge issue is barred.

¶15. Still, while the discharge issue is barred, a look at the merits shows William listed his house-note obligation on his bankruptcy schedules as a "domestic support obligation." And it is well established that a chapter 7 discharge "*does not discharge an individual debtor from any debt . . . for a domestic support obligation*[.]" 11 U.S.C. § 523(a)(5) (emphasis added). So even though the issue is barred, we find the chancellor was right that the note obligation was not discharged by William's chapter 7 bankruptcy.

## II. The Parties Never Agreed to a Credit

¶16. William next argues that if the house-note payment was in the form of a domestic support obligation (and therefore not dischargeable in bankruptcy), he should get a dollar-for-dollar credit for all the benefits Sandra receives from his Social Security. He cites *Spalding v. Spalding*, 691 So. 2d 435, 440 (Miss. 1997), where our supreme court held that derivative Social Security benefits can be used as a substitute income stream to satisfy *alimony*[6] obligations. (Emphasis added). But here, no alimony was awarded. Instead, under the PSA's terms, each party expressly waived all rights to permanent or lump-sum alimony.

---

[6] Our supreme court also noted that this was allowed in the context of child-support obligations, but it never extended such a rule to property division or debt obligations. *Id*. at 439.

7

Thus, *Spalding* does not apply.

¶17.   More importantly, the parties' PSA does not mention William receiving a credit if Sandra starts to draw Social Security benefits.  A "property settlement agreement is a contract, and contract interpretation is a question of law, which is reviewed de novo." *McFarland v. McFarland*, 105 So. 3d 1111, 1118 (¶21) (Miss. 2013).  "An agreement made between the parties should ordinarily be enforced, and the court should take a dim view of efforts to modify or reform the parties' settlement agreement."  *Id*. at 1119 (¶23) (quoting *Williams v. Williams*, 37 So. 3d 1171, 1174 (Miss. 2010)).  Where a PSA is a valid contract it should not be modified.[7]

¶18.   Our review here shows the parties' PSA is clear and unambiguous.  There is simply no mention of Social Security benefits or credits.  Instead, the parties agreed that the only way William's house-note obligation would cease was if Sandra died, remarried, or sold the house.  Thus, we find no error in the chancellor refraining from changing it to give William the requested credit.  We affirm.

¶19.   **THE JUDGMENT OF THE LAMAR COUNTY CHANCERY COURT IS AFFIRMED.  ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

   **LEE, C.J.,  GRIFFIS, P.J., BARNES, ISHEE, ROBERTS AND  CARLTON, JJ., CONCUR. JAMES, J., CONCURS IN PART WITHOUT SEPARATE WRITTEN**

---

[7] Courts can "modify property settlement agreements under certain circumstances, for example, where fraud, overreaching, or mistake are involved; however, absent special circumstances, courts should be hesitant to modify a property settlement agreement, as they would with any contract." *Id*. at n.8 (citing *Speed v. Speed*, 757 So. 2d 221, 224-25 (Miss. 2000)).

8

**OPINION.   IRVING, P.J., CONCURS IN PART AND DISSENTS IN PART WITHOUT SEPARATE WRITTEN OPINION. FAIR, J., NOT PARTICIPATING.**