# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2015-CA-00335-COA

**WESLEY GENE PATRICK**                                                        **APPELLANT**

**v.**

**CATHERINE ANN PATRICK**                                                        **APPELLEE**

DATE OF JUDGMENT:                01/22/2015
TRIAL JUDGE:                            HON. PERCY L. LYNCHARD JR.
COURT FROM WHICH APPEALED:    DESOTO COUNTY CHANCERY COURT
ATTORNEY FOR APPELLANT:        BYRON RUSSELL MOBLEY
ATTORNEY FOR APPELLEE:          CATHERINE ANN PATRICK (PRO SE)
NATURE OF THE CASE:             CIVIL - DOMESTIC RELATIONS
TRIAL COURT DISPOSITION:        GRANTED DIVORCE ON GROUND OF
                                ADULTERY, DIVIDED THE MARITAL
                                ESTATE, AND ORDERED APPELLANT TO
                                PAY ALL GUARDIAN AD LITEM FEES
                                AND APPELLEE'S ATTORNEY'S FEES
DISPOSITION:                    AFFIRMED - 04/05/2016
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE IRVING, P.J., FAIR AND WILSON, JJ.**

**WILSON, J., FOR THE COURT:**

¶1.     In this divorce proceeding, Wesley Patrick appeals the division of the marital estate,

the award of attorney's fees to his ex-wife, Catherine Patrick, and the court's order requiring

him to pay all fees of the guardian ad litem who was appointed to investigate his allegations

that Catherine had neglected or abused their child.  Wesley requests that we reverse and

remand on all three issues.  Although Catherine failed to file a brief on appeal, we affirm

because the record shows that Wesley consented to the terms of the divorce decree that he

seeks to challenges on appeal.  By his consent, Wesley waived the right to litigate the merits

of those issues on appeal. Therefore, we affirm despite Catherine's failure to file a brief.

## FACTS AND PROCEDURAL HISTORY

¶2. Wesley and Catherine were married in June 2009. They have one child, a daughter, who was born in March 2011. In April 2012, they separated, and Wesley filed for divorce on the grounds of adultery and cruel and inhuman treatment. Catherine's answer admitted that she had committed adultery but pled condonation. Catherine also counterclaimed for divorce on the ground of cruel and inhuman treatment. Wesley and Catherine both sought legal and physical custody of their daughter.

¶3. At a May 16, 2012 hearing, Wesley apparently alleged that Catherine had neglected or abused their daughter, although that hearing was not transcribed for the record on appeal. The chancellor referred the allegations to the Department of Human Services ("DHS") to investigate and appointed a guardian ad litem ("GAL") for the child.[1] The order directed DHS to provide its findings to the court for in camera review, but the record on appeal does not reflect whether that occurred or what DHS found. The order provided "that initially the fees and expenses of the [GAL would] be paid by [Wesley]" and that a final assessment of GAL fees, attorney's fees, and expenses would be made after the conclusion of the investigation by DHS and the GAL. The chancellor also entered a temporary custody and visitation order granting Wesley liberal visitation.

---

[1] *See* Miss. Code Ann. § 93-5-23 (Rev. 2013) ("when a charge of abuse and/or neglect arises in the course of a custody action . . . the court shall appoint a guardian ad litem"). At the final hearing on the merits, the GAL testified that she was "appointed . . . to investigate the physical neglect of [the child]." The GAL stated that Wesley had alleged "that the child had continuous diaper rash" and that Catherine was not feeding her.

¶4.    The case was tried in August 2014. Catherine admitted that she had committed adultery and that it was not condoned, so Wesley was granted a divorce on that ground. At the conclusion of the trial, the chancellor announced his ruling from the bench and subsequently entered a final decree of divorce. In the decree, the chancellor found by clear and convincing evidence that, for a number of reasons, both Wesley and Catherine were unfit to have custody of their child. The chancellor therefore concluded that it was in the child's best interest to grant custody to DHS, and the child was placed with a foster family.

¶5.    The chancellor found that the marital home had a value of approximately $98,000 and was subject to a mortgage with a balance of approximately $90,000. The chancellor awarded Wesley possession and ownership of the home, assigned him responsibility for the mortgage, and directed him to pay Catherine $6,000 for her interest in the home. The court also granted Wesley possession and ownership of two ten-year-old vehicles, which he found had "little equity or value," and assigned him responsibility for the associated debt.

¶6.    The chancellor also awarded Catherine $12,910.04 in attorney's fees. The chancellor found that Wesley should pay these fees because Catherine was unable to pay them and because they were incurred in part as a result of Wesley's "allegations of neglect for which there [was] no foundation laid or proven." The chancellor noted that Catherine had borrowed the money to pay her attorney "from her parents and from others." Finally, the chancellor ordered Wesley to pay the remaining balance of the GAL's fees of $1,441[2] because there was "no substantiation of neglect as to the allegations of neglect or the deprivation of food."

_____

[2] Wesley had already paid $1,500 to the GAL.

¶7. Wesley filed a timely motion for reconsideration[3] in which he asserted that the court's ruling "was not in the best interest of the minor child and the property division was not equitable." Catherine also filed a motion for reconsideration, although her motion identified no specific grounds for relief and appears to have been untimely. In addition, in November 2014, the child's paternal grandmother moved to intervene to seek custody or visitation.

¶8. On January 22, 2015, the chancellor entered a "Consent Order on Modification and Reconsideration of Original Decree of Divorce." The order stated that there had been a hearing on the parties' respective motions for reconsideration,[4] that the parties subsequently met and conferred, and that, "with the assistance of the [GAL], the parties ha[d] reached an agreement which they [sought] to have approved by the [c]ourt." The order recited that DHS had provided Wesley and Catherine with a plan and requirements for regaining custody of their child and that Wesley and Catherine had "met all objectives as set forth by [DHS] and ha[d] rehabilitated themselves as to the [chancellor's] determination that they were unfit." The order further stated that Wesley, Catherine, and the GAL all agreed that it would be in the child's best interest for Wesley and Catherine to have joint legal and physical custody. Thus, the order granted joint legal and physical custody to Wesley and Catherine, set out a custody schedule, and addressed child support and related matters. Finally, the order

---

[3] "[A] 'motion for reconsideration' is treated as a motion to alter or amend the judgment under Rule 59(e)." *Chase v. State*, 171 So. 3d 463, 487 (¶75) (Miss. 2015) (citing *Brooks v. Roberts*, 882 So. 2d 229, 233 (¶15) (Miss. 2004)). "A motion to alter or amend the judgment shall be filed not later than ten days after entry of the judgment." M.R.C.P. 59(e).

[4] The record does not include a transcript of a hearing on the parties' motions for reconsideration or a transcript of the hearing on the consent order, if one was held.

4

provided "[t]hat all other matters contained in the original decree of divorce are confirmed and shall remain in full force and effect." Wesley, Catherine, the grandmother, their attorneys, and the GAL all signed the order as "APPROVED AS TO CONTENT AND AS TO FORM." DHS signed the order as "APPROVED AS TO FORM."

¶9. After the consent order was entered, there was no further action on the parties' respective motions for reconsideration. The next docket entry is Wesley's notice of appeal, which he filed on February 20, 2015. On appeal, Wesley argues that the chancellor erred by (1) failing to make findings to support his distribution of the marital estate and awarding Catherine seventy-five percent of the equity in the marital home; (2) awarding Catherine attorney's fees; and (3) ordering him to pay all fees of the GAL. Catherine failed to file a brief on appeal. The attorney who represented Catherine at trial informed this Court that the chancery court had specifically authorized her to withdraw and that she no longer represented Catherine. She stated that she had forwarded Catherine documents regarding the appeal and had advised her that she should attend to the appeal herself or hire new counsel. Subsequently, a show-cause notice was sent to Catherine. However, Catherine still failed to file a brief.

## DISCUSSION

¶10. When the appellee fails to file a brief,

> this Court has two options. First, we may take the appellee's failure to file a brief as a confession of error and reverse. This option is favored when the record is complicated or of large volume and the case has been thoroughly briefed by the appellant with apt and applicable citation of authority so that the brief makes out an apparent case of error. However, if the record can be conveniently examined and such examination reveals a sound and

5

unmistakable basis or ground upon which the judgment may be safely affirmed, we may disregard the appellee's error and affirm.

*Jay Foster PLLC v. McNair*, 175 So. 3d 565, 571 (¶15) (Miss. Ct. App. 2015) (quoting *Archie v. City of Canton*, 92 So. 3d 1279, 1282 (¶10) (Miss. Ct. App. 2012)).

¶11.     In this case,"the record can be conveniently examined and such examination reveals" that Wesley consented to the substance of the divorce decree from which he appeals. While Wesley's consent does not deprive us of appellate jurisdiction, it does defeat Wesley's arguments on the merits. Wesley's consent is "a sound and unmistakable basis or ground upon which the judgment may be safely affirmed," *id.*, so we affirm notwithstanding Catherine's failure to file a brief.

¶12.     "A party generally may not appeal a judgment entered by consent or confession[.]" Luther T. Munford, *Mississippi Appellate Practice* § 6.2, at 6-12 (2007); *accord Sanghi v. Sanghi*, 759 So. 2d 1250, 1255 (¶22) (Miss. Ct. App. 2000). As this Court explained in *Sanghi*, the general rule that a party may not appeal a consent judgment is not a rule of appellate jurisdiction. *See Sanghi*, 759 So. 2d at 1255 (¶22). Rather, it is a rule about the *merits* of issues raised in an appeal from a consent judgment by a party who consented to the judgment. *See id.*; *Peebles v. Peebles*, 153 So. 3d 728, 731-32 (¶13) (Miss. Ct. App. 2014). The only issues that are viable in such an appeal are "issues . . . akin to those under [Mississippi Rule of Civil Procedure] 60(b)—claims such as fraud, misrepresentation, accident, or mistake." *Peebles*, 153 So. 3d at 731-32 (¶13) (citing *Rushing v. Rushing*, 724 So. 2d 911, 915-16 (¶¶19-20) (Miss. 1998)). A party to a consent judgment may not seek "to litigate that which is already settled" by consent. *Id.* at 732 (¶13) (quoting *Rushing,* 724 So.

6

2d at 915-16 (¶¶19-20)).[5]

¶13.    In the present case, although the consent order modifying the parties' divorce decree focused primarily on the issue of child custody, the order expressly provided "[t]hat all other matters contained in the original decree of divorce are confirmed and shall remain in full force and effect." The "original decree," of course, covered the very issues—property division, attorney's fees, and GAL fees—that Wesley now raises on appeal. Further, Wesley and his attorney signed the consent order as "APPROVED AS TO CONTENT AND AS TO FORM." In contrast, on the same page of the order, DHS approved "AS TO FORM" only. The nature of Wesley's approval of the consent order also differed from the original divorce decree, which his attorney "APPROVED AS TO FORM and Not as to Content." Given these differences, it is evident that Wesley approved and consented to both the form of the consent order *and its substance*. The substance of the order made clear that all other terms of the original divorce decree—including the terms that Wesley now challenges on appeal—were "confirmed" and would "remain in full force and effect." If Wesley wanted to preserve his ability to challenge any part of the decree on appeal, he could have insisted that the consent order include an express reservation of a right to appeal. Absent such a reservation, however, we can only conclude that the parties consented to "all other matters

---

[5] This is consistent with federal practice. *See* Charles Alan Wright et al., 15A *Federal Practice and Procedure: Jurisdiction and Related Matters* § 3902 (2d ed. 1991) ("Parties who have consented to entry of a judgment at times are said to lack standing to appeal, and occasionally appeals from consent judgments are simply dismissed. The true principle at work, however, is one of waiver or consent; the appropriate disposition, if the appeal represents no more than a retroactive attempt to undo consent properly given, is affirmance rather than dismissal." (footnotes omitted)).

contained in the original decree of divorce."

¶14.    In addition, after the consent order was entered, Wesley did not pursue a ruling—and the chancellor did not rule—on his motion for reconsideration. As noted above, Wesley's motion for reconsideration specifically challenged the division of property in the original divorce decree. If the consent order was not intended to resolve that issue by consent, then there should have been some further action on Wesley's motion—a ruling, a request for a ruling, or perhaps a withdrawal of the motion. That no further action was taken also supports our conclusion that the consent order meant just what it said: that, by the consent of the parties, "all other matters contained in the original decree of divorce [were] confirmed and [would] remain in full force and effect."

¶15.    Because Wesley consented to the form and substance of the judgment entered in the chancery court, he is precluded from seeking to litigate on appeal the merits of the issues that judgment covers. That is all that Wesley's appeal seeks to do. He makes no claim that the consent judgment was entered as a result of fraud, mistake, or accident. Rather, Wesley simply argues that the chancellor erred on the merits with respect to the division of property, the award of attorney's fees, and the assessment of GAL fees. The original divorce decree resolved these matters and, *by consent of the parties*, those terms of the decree have been "confirmed and . . . remain in full force and effect." Accordingly, Wesley's arguments on appeal fail because a party to a consent judgment may not use an appeal to seek "to litigate that which is already settled" by consent. *Peebles*, 153 So. 3d at 732 (¶13) (quoting *Rushing*, 724 So. 2d at 916 (¶22)).

**CONCLUSION**

¶16.    By agreeing to the substance of the consent order modifying the original divorce decree, Wesley consented to the terms of the decree that divided the marital property, awarded attorney's fees, and assessed GAL fees.  By consenting to those terms, Wesley waived the right to argue on appeal that the chancellor erred in dividing the marital property, awarding attorney's fees, or assessing GAL fees.  Accordingly, we affirm.

¶17.    **THE JUDGMENT OF THE DESOTO COUNTY CHANCERY COURT IS AFFIRMED.    ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

    **LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, CARLTON, FAIR, JAMES AND GREENLEE, JJ., CONCUR.**