# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2016-CA-00532-COA

**SUSAN HARRIS**                                                                 **APPELLANT**

**v.**

**THOMAS L. HARRIS**                                                              **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 03/16/2016 |
| TRIAL JUDGE: | HON. H. DAVID CLARK II |
| COURT FROM WHICH APPEALED: | NEWTON COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | THOMAS L. TULLOS |
| ATTORNEYS FOR APPELLEE: | WILLIAM B. JACOB |
| | JOSEPH A. KIERONSKI JR. |
| | DANIEL P. SELF JR. |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| TRIAL COURT DISPOSITION: | HELD THAT SOCIAL SECURITY BENEFITS AWARDED TO APPELLANT COULD BE CREDITED TO APPELLEE AS ALIMONY PAYMENTS |
| DISPOSITION: | AFFIRMED – 05/16/2017 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**IRVING, P.J., FOR THE COURT:**

¶1.     Thomas L. Harris ("Leon")—alleging that a material change in circumstances had occurred since the judgment of divorce from his former spouse, Susan Harris—filed a complaint against Susan, seeking a reduction or termination of his alimony obligation that he agreed to in the property-settlement agreement (Agreement) that was approved in the judgment of divorce.  Rather than reducing or terminating Leon's alimony obligation, the chancellor held that Susan's Social Security benefits that were derivative of Leon's Social

Security earning credits would be credited against Leon's monthly alimony obligation. Susan now appeals, and argues that the chancellor erred when he credited the Social Security payments against Leon's alimony obligation and modified the Agreement without requiring Leon to prove that a material change in circumstances had occurred. We find that the chancellor did not err as to either issue; consequently, we affirm.

FACTS

¶2. Susan and Leon were married on July 14, 1979. They sought an irreconcilable-difference divorce, and entered into an Agreement, wherein Leon agreed to pay $2,755 per month to Susan as periodic alimony. The Agreement was incorporated into the divorce, which became final on February 25, 2011. The Agreement did not address any contingency with respect to the alimony other than that it would end at Susan's remarriage or death.

¶3. After the divorce, Susan filed for and obtained derivative Social Security retirement benefits in the amount of $1,035 per month based on Leon's earnings record with the Social Security Administration. On January 21, 2015, Susan filed a complaint to review the health provision of the Agreement. On March 5, 2015, Leon filed his answer, which contained a motion to dismiss and a counterclaim to reduce or terminate his alimony payments in light of the fact that Susan had begun drawing Social Security benefits off of his earnings record.

¶4. On March 8, 2016, the chancellor granted Leon's Rule 12(b)(6) motion and held a hearing on his counterclaim. The parties stipulated that Susan was receiving $1,035 per month in Social Security benefits that were derivative of Leon's work history. Leon argued that he should be given credit for the $1,035 being paid to Susan by the Social Security

2

Administration. Leon maintained that he should be required to pay Susan only an additional $1,720 per month, since she was already drawing $1,035 per month from Social Security as a result of his earnings record. The chancellor agreed and entered judgment in his favor. Susan now appeals.

## DISCUSSION

¶5. This Court in *Russell* acknowledged that the standard of review in domestic-relations matters is "extremely limited":

> We will not disturb a chancellor's findings unless the findings were manifestly wrong or clearly erroneous or unless the chancellor applied an erroneous legal standard. *Id*. Where the record contains substantial evidence to support the chancellor's findings of fact, we will not reverse his decision. *Id*.

*Russell v. Russell*, 148 So. 3d 1052, 1053 (¶4) (Miss. Ct. App. 2014) (quoting *Phillips v. Phillips*, 45 So. 3d 684, 692 (¶23) (Miss. Ct. App. 2010)).

¶6. Susan asserts that the chancellor erred in modifying the Agreement before requiring Leon to show a material change in circumstances. Susan asserts that the Agreement is a binding contract that is devoid of fraud, unconscionability, or any other factors which would render it an invalid contract; thus, the chancellor erred by disturbing the Agreement's terms. She cites *Peebles*, in which this Court held that a property-settlement agreement—like any other contract—is "an agreement made between the parties [and] should ordinarily be enforced, and the court should take a dim view of efforts to modify or reform the parties' settlement agreement." *Peebles v. Peebles*, 153 So. 3d 728, 732 (¶17) (Miss. Ct. App. 2014) (quoting *McFarland v. McFarland*, 105 So. 3d 1111, 1119 (¶23) (Miss. 2013)). Susan also cites *Lestrade*, in which this Court held that property-settlement agreements "entered into by

3

divorcing parties and incorporated into the divorce decree are not subject to modification, except in limited situations." *Lestrade v. Lestrade*, 49 So. 3d 639, 642 (¶10) (Miss. Ct. App. 2010).

¶7.     In support of her argument that the chancellor erred when he granted Leon credit for the Social Security benefits that she was receiving without first requiring Leon to show that a material change in circumstances had occurred since entering into the Agreement, Susan cites this Court's decision in *Cockrell*, which provides:

> A payor spouse's alimony obligation may be modified or even terminated if the spouse is able to show a material change of circumstances has occurred since the original divorce decree. *West v. West*, 891 So. 2d 203, 212 (¶21) (Miss. 2004) (citation omitted). However, "the material change must be one that was not reasonably anticipated at the time of the original decree." *Clower v. Clower*, 988 So. 2d 441, 444 (¶7) (Miss. Ct. App. 2008) (citing *Holcombe v. Holcombe*, 813 So. 2d 700, 703 (¶11) (Miss. 2002)). A material change in the income and expenses of both parties should be considered in determining any modification of periodic alimony. *Austin v. Austin*, 766 So. 2d 86, 90 (¶19) (Miss. Ct. App. 2000) (citing *Armstrong* [*v. Armstrong*], 618 So. 2d [1278,] 1280 [(Miss. 1993)]).

*Cockrell v. Cockrell*, 139 So. 3d 766, 770 (¶12) (Miss. Ct. App. 2014). Susan contends that Leon cannot show a material change in circumstances, as his health status has not changed, and he is still working as a bank president like he was at the time of the divorce. Susan argues that even if her receipt of Social Security benefits constitutes a material change, Leon should have reasonably anticipated at the time of the divorce that she would begin collecting Social Security benefits in a few years, since Leon was sixty-one years old and Susan was sixty years old at that time. She also points out that at the time the two entered into the Agreement, Leon could have reasonably anticipated the need for a clause addressing Susan's

4

probable receipt of Social Security benefits in a few years.

¶8. In response, Leon submits that neither *Peebles* nor *Lestrade* is proper authority for this issue because both cases address modification of *property division*, not modification of *alimony*. Leon references this Court's decision in *Clower*, which provides that "[p]eriodic alimony can be modified by increasing, decreasing, or terminating the award due to a material change in circumstances." *Clower*, 988 So. 2d at 444 (¶7). Leon asserts that he was not required to show a material change in circumstances because he was not attempting to modify his alimony payment; rather, he maintains that he was only seeking clarification from the court as to *how* to make his alimony payment, because the Agreement is devoid of language specifying from which source those payments may be derived.

¶9. Leon cites *Spalding v. Spalding*, 691 So. 2d 435, 439 (Miss. 1997), in support of his argument that the chancellor was correct in finding that he should be credited for Susan's receipt of the Social Security benefits derived from his work record. The facts of *Spalding* are similar to those in the matter at hand. In *Spalding*, the appellant insisted that "the decision of the chancellor to credit derivative Social Security benefits against alimony represented a downward modification of the alimony granted to [the appellant]," and asserted that "[the appellee] failed to meet his burden of proof regarding a material change in circumstances." *Id*. The chancellor, in considering whether derivative Social Security benefits could be credited against alimony, relied on the Mississippi Supreme Court's decision in *Mooneyham v. Mooneyham*, 420 So. 2d 1072, 1073-74 (Miss. 1982), wherein the court held that Social Security payments derivative from the child-support payor should be

5

credited against the payor's child-support obligation. *Spalding*, 691 So. 2d at 438 (citing *Mooneyham*, 420 So. 2d at 1073-74). The Mississippi Supreme Court in *Spalding* affirmed the chancellor's application of *Mooneyham*, finding that, in light of *Mooneyham*'s holding that "Social Security payments derivative from the child[-]support payor should be credited against the child support," it could not "fathom any valid reason or reasonable logic" as to why the rule of law would be any different with respect to periodic alimony rather than child support. *Spalding*, 691 So. 2d at 439 (citations omitted).

¶10. We agree with Leon that *Spalding* is dispositive of the issue presented. Therefore, we affirm the decision of the chancellor. The Agreement between Leon and Susan did not specify or qualify the source of income for payment of the alimony obligation. It simply required that Leon pay the amount to Susan. Crediting Social Security payments derivative from Leon against his alimony obligation, as set forth in the Agreement, is not a breach of the terms of that Agreement. As Leon points out, Susan is receiving the same amount of alimony that she is entitled to under the Agreement, and she would not be receiving the Social Security payments unhinged from Leon's Social Security earnings record. Thus, we find that the chancellor did not abuse his discretion in failing to require Leon to show a material change in circumstances because Leon's obligation to pay alimony in the amount set forth in the Agreement remains the same.

¶11. **THE JUDGMENT OF THE NEWTON COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

**LEE, C.J., GRIFFIS, P.J., BARNES, ISHEE, CARLTON, FAIR, WILSON, GREENLEE AND WESTBROOKS, JJ., CONCUR.**

6