McMILLIN, C.J.,
for the Court:
¶ 1. This appeal arises from a judgment in a post-divorce contempt proceeding brought by Christy Morgan against her former husband, John Morgan. Mrs. Mor *322 gan brought this action to compel Mr. Morgan to honor the terms of their property settlement agreement regarding a 1994 Honda Civic awarded to Mrs. Morgan in the agreement. Under the terms of the 1996 agreement, Mr. Morgan committed to make all remaining car payments and to pay for insurance and the cost of a tag for the vehicle. Once the loan was paid off, Mr. Morgan agreed that he would convey title to the vehicle to Mrs. Morgan. According to Mrs. Morgan’s petition, the note payments on the car were scheduled to run through March 1999.
¶ 2. In mid-December 1996, the vehicle was totally destroyed in an accident. The insurance company settlement on the vehicle was enough to pay off the bank loan and produce a surplus of $1,650.43. The surplus money over the loan payoff is all Mrs. Morgan received from the loss of her car. After the vehicle was destroyed, Mr. Morgan ceased to make any further payments relating to his former wife’s transportation needs. Mrs. Morgan brought a contempt proceeding claiming that Mr. Morgan’s obligation, after the loss of this vehicle, was to continue to pay directly to her a similar amount on a monthly basis in order to permit her to obtain, insure, and license a replacement vehicle. Evidence indicated that, at the time of the casualty loss, there were twenty-seven payments of $318 outstanding on the car loan. There was no evidence presented as to the cost of licensing and insuring the vehicle for that same term.
¶ 3. Mr. Morgan defended on two grounds. First, he urged that a literal reading of the agreement obligated him to make periodic payments until the balance on this particular loan was paid off, after which his only obligation was to convey to Mrs. Morgan the title to a specific vehicle, namely the 1994 Honda Civic. He claims that his duty to pay under this provision of the settlement agreement ceased once the loan was paid off, no matter how it was paid. He was apparently of the opinion that his secondary obligation to convey title to the vehicle to her at a future time was extinguished by her receipt of all the insurance proceeds arising from the vehicle’s total destruction.
¶ 4. In his second defense to Mrs. Morgan’s claim, Mr. Morgan presented a previously-undisclosed side agreement between Mr. and Mrs. Morgan dated the same date as the property settlement agreement filed with the court. The agreement filed with the court indicated that Mrs. Morgan was to receive a distribution of one-half of Mr. Morgan’s thrift savings plan at his place of employment. Apparently, the parties understood that the balance in the account was about $18,-000 so that Mrs. Morgan would be receiving $9,000 under that provision of the agreement. By the unified side agreement, however, Mr. and Mrs. Morgan covenanted that she would retain only $2,000 of the distribution and would pay the remainder over to Mr. Morgan. Mr. Morgan explained that the side agreement was necessary because the terms of the thrift plan did not permit him to make a withdrawal except for purposes of distribution to a spouse in connection with a divorce proceeding.
¶ 5. In actuality, Mrs. Morgan only received $7,222.75 in the distribution because of withdrawal penalties and other charges. She refused to honor the side agreement, choosing instead to retain all of the money. She claimed that she had to use a substantial part of the money to discharge an income tax liability created by the distribution and excused her failure to give her former husband any part of the money by saying she subsequently learned that to do so would be a violation of the terms of the thrift plan. Mr. Morgan argued in the contempt proceeding that he was entitled to some credit for Mrs. Morgan’s failure to honor the side agreement against anything he might otherwise owe Mrs. Morgan in regard to the ear. He urged that the credit should be an amount equal to what he should have gotten under the side agreement. He claimed that he would not *323 have committed to pay for Mrs. Morgan’s car had he not anticipated receiving approximately $7,000 in cash near the time of the divorce.
¶6. The chancellor, clearly disturbed (and appropriately so) by the actions of both parties relating to the undisclosed side agreement, stated in his order the following:
This Court will not now entertain any representation of the fiscal arrangements of the parties now shown to have been different than that presented in the Court ordered Divorce Judgment and will leave the parties as they have previously agreed as to the withdrawal of the funds in the thrift savings plan by Plaintiff and her entitlement to the 1994 Honda Civic....
¶7. The chancellor, in resolving other matters tried at the same time, adjusted child support upward from $300 to $330 per month and clarified the visitation schedule, but the judgment was silent as to any further resolution of Mrs. Morgan’s claim regarding Mr. Morgan’s obligations to provide her a vehicle at his expense.
¶ 8. Mrs. Morgan claims that the chancellor’s failure to grant her any relief was an abuse of discretion since the clear purpose of the agreement with her former husband was that she would be furnished a vehicle for which she would owe no payments and for which insurance and a tag would be provided at no expense to her. She claims that she has been deprived of the benefit of her bargain because, rather than having a vehicle of approximately $10,000 in value with insurance and tag furnished, she has only the surplus insurance funds remaining after the bank loan was paid off — an insignificant amount when compared to what she had contracted to receive. She points out that Mr. Morgan has, by virtue of the destruction of the vehicle in an accident, been relieved of responsibility for making the monthly loan payments and paying for insurance and car tag fees through the end of the loan term — a rather substantial sum just based on the 27 loan payments of $318 each, without taking into consideration the added costs of licensing and insuring the vehicle. Under those circumstances, she claims that she has been unfairly deprived of the benefits of the bargain she struck and that her former husband has enjoyed an unanticipated and inequitable windfall if he is not required to honor the terms of the agreement, or at least some equitable modification of the original agreement which has been rendered impossible due to unanticipated events beyond the parties’ control.
¶ 9. We conclude that, there is enough ambiguity in the holding of the chancellor this Court must reverse and remand for further proceedings.
¶ 10. In our review of the record, it appears that the chancellor at one point considered dismissing Mrs. Morgan’s contempt petition on the ground that she (and her former husband) had come into court with unclean hands. The chancellor was properly concerned about the effect of Mrs. Morgan’s participation in the undisclosed side agreement on the propriety of granting her any relief in a court of equity. Under the circumstances, we cannot say with certainty that, had the chancellor elected to decline relief on that ground, it would have been an abuse of discretion. It is within the chancellor’s discretion to decline to entertain even a meritorious claim for relief if the petitioning party comes to the court with unclean hands. Brennan v. Brennan, 605 So.2d 749, 752 (Miss.1992); Simmons v. Simmons, 724 So.2d 1054 (¶ 22)(Miss.Ct.App.1998); V.A. Griffith, Mississippi Chancery Practice §§ 32, 42 (2d ed.1950).
¶ 11. However, in our review of the chancellor’s ruling, we are unable to say with the requisite certainty that he decided the case on this basis. One interpretation of the chancellor’s statement quoted above is that he elected to simply disregard the side agreement and enforce the agreement actually filed with the court *324 according to its terms. If that is the basis on . which the chancellor ruled, then Mrs. Morgan did nothing inequitable when she retained the entire thrift plan distribution, and as a result she should have been entitled to consideration for relief on the merits of her claim concerning the vehicle. If that is the case, we are of the opinion that the chancellor abused his discretion when he denied Mrs. Morgan any relief on the vehicle. A property settlement agreement is, in essence, a contract between the divorcing parties. East v. East, 493 So.2d 927, 931-32 (Miss.1986). As such, each party is entitled to the benefit of his or her bargain, as in any other contractual situation. We do not think it particularly remarkable to suggest that a woman in the process of divorcing her husband, especially when she anticipates receiving custody of a minor child of the parties, would be concerned about making reasonable arrangements for her and the child’s transportation needs after the divorce. One reasonable means of meeting that need would be to strike a bargain whereby the departing husband agreed to furnish a vehicle at no cost to her, including the costs of insuring and licensing the vehicle.
¶ 12. That appears to be the true intent of the parties in this instance. While the possibility of a casualty loss to a vehicle furnished under such an arrangement always exists, it would not seem that such a loss is so foreseeable that the parties should be required to explicitly contract as to Mr. Morgan’s alternative duties in the event of such a loss prior to the fulfillment of his end of the bargain.
¶ 13. It is our opinion that a fair reading of the bargain struck by Mr. and Mrs. Morgan was that Mr. Morgan agreed to expend an ascertainable sum of money (within certain narrow limits affected by future insurance costs and vehicle licensing fees not capable of precise advance determination), the purpose of that expenditure being to provide to Mrs. Morgan a suitable means of transportation. It was not, in our opinion, a material element of Mr. Morgan’s agreement that the money be paid for the particular Honda vehicle and nothing more such that,, upon the unexpected loss of that vehicle, his further obligations ceased. We are rather of the opinion that, in this circumstance, when the particular vehicle mentioned in the agreement was unexpectedly destroyed, Mr. Morgan’s commitment to expend funds to meet his former wife’s transportation needs continued as before.
¶ 14. Certainly Mrs. Morgan received no particular benefit from the fact that insurance proceeds retired the indebtedness on the vehicle, since she had' no obligation under the divorce agreement to pay that indebtedness and there is no arguable reason to permit Mr. Morgan to escape a rather substantial financial commitment to his former wife based on this unanticipated event.
¶ 15. But for the problems arising out of the undisclosed side agreement, this Court could readily conclude that the chancellor should have fashioned an equitable remedy that would have permitted Mrs. Morgan to acquire a replacement vehicle and would have compelled Mr. Morgan to make contributions toward this alternate vehicle that would have been essentially the same had the Honda not been unexpectedly destroyed. Under those circumstances, equity would have been accomplished. Mrs. Morgan would have had the full benefit of her bargain, and Mr. Morgan would have suffered no detriment since he would have merely made periodic expenditures through March 1999 in amounts that he had committed to make under the agreement.
¶ 16. The matter is complicated by the undisclosed side agreement, the provisions of which were clearly intended to alter the terms of the property settlement agreement filed with the court. It becomes necessary, therefore, to consider the effect of that side agreement on the propriety of the chancellor’s decision to effectively deprive Mrs. Morgan of the prospect *325 of any relief. At the outset, we can say with some certainty that the provisions of the agreement were not enforceable in the contempt proceeding as Mr. Morgan suggested to the chancellor. In Sullivan v. Pouncey, the Mississippi Supreme Court considered a case where the chancellor had enforced a private agreement entered into only hours prior to the execution of a formal agreement filed with the court in the divorce proceeding. Sullivan v. Pouncey, 469 So.2d 1233 (Miss.1985). The private agreement contradicted the filed agreement in several key areas, and the former husband sued to enforce his right to one-half the equity in the home under the private agreement, although the filed agreement awarded the home to his former wife. Id. The chancellor granted relief, but, on appeal, the supreme court found the private contract unenforceable, saying as follows:
A prior agreement entered into by the parties is not enforceable, if not approved by the court. It would be tantamount to defrauding the court for parties to present to the court a property settlement agreement, which is subsequently incorporated into the final decree, while actually intending to abide by a contradictory, private contract. This is clearly against public policy.
Id. at 1234.
¶ 17. We observe that the supreme court, upon finding the side agreement unenforceable, granted certain relief to the husband by way of undoing his previous performance under the agreement. The court ordered the former wife to return all sums already paid to her by the husband pursuant to the terms of the now-void private agreement. There was no discussion of the possibility of denying that relief because of the husband’s unclean hands, even though he was clearly an active participant in the scheme to mislead the chancellor as to the true nature of the agreement of the parties. The opinion is completely silent on the subject, which is a situation to be distinguished from the case where the issue of unclean hands was raised and affirmatively rejected by the court. Therefore, we do not read Sullivan v. Pouncey as necessarily rejecting the applicability of the unclean hands doctrine in such situations.
¶ 18. We are unable to determine from the chancellor’s opinion in this case whether (a) he was denying relief to Mrs. Morgan under the doctrine of unclean hands because of her complicity in a side agreement that she entered into and then failed to honor, or whether (b) he chose to ignore the side agreement altogether as being void and simply determined that Mrs. Morgan was not entitled to relief under the provisions of the property settlement agreement as a matter of law.
¶ 19. If the chancellor decided the issue on the first consideration, the case presents an issue of law that has not been briefed by the parties and, therefore, one on which this Court is unprepared to rule. If the chancellor decided the issue on the second consideration, we are satisfied that he was manifestly in error since Mrs. Morgan was, by circumstances beyond the contemplation of the parties at the time of contracting, deprived of the benefit of her bargain while her former husband enjoyed an unexpected and inequitable windfall of over $8,000.
¶ 20. We, therefore, find it necessary to reverse and remand for further proceedings at which the chancellor should, if it is his intention to bar Mrs. Morgan’s claim on the doctrine of unclean hands, make those findings of fact and conclusions of law that would support that finding. These findings and conclusions would permit an appellate court, should Mrs. Morgan desire to test that ruling in a subsequent appeal, to determine with some measure of certainty whether the chancellor abused his discretion in so ruling. Alternatively, should it be the chancellor’s determination that the side agreement is simply unenforceable and entitled to no consideration, then we conclude that the provisions regarding Mr. Morgan’s obli *326 gation to furnish a vehicle to his former wife should be enforced and the chancellor should proceed to fashion an equitable remedy that would permit Mrs. Morgan to obtain suitable transportation comparable to that lost in the accident and would require Mr. Morgan to expend funds toward defraying the cost of acquiring, insuring, and licensing the vehicle that would equate as nearly as possible to the remainder of his obligation at the time of the unanticipated casualty loss to the Honda vehicle.
¶ 21. Mrs. Morgan, as a part .of her argument, has urged that this Court conclude that the provision regarding the automobile was in the nature of child support because of the benefits that would necessarily flow to the child by virtue of the availability of a vehicle. We do not find Mrs. Morgan’s argument particularly persuasive, but conclude that it is not necessary to decide the question since the result is the same whether or not the provision has some attributes of child support.
¶ 22. THE JUDGMENT OF THE CHANCERY COURT OF FORREST COUNTY IS REVERSED AND REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS OF THE APPEAL ARE ASSESSED EQUALLY TO THE APPELLANT AND THE APPELLEE.
KING AND SOUTHWICK, P.JJ., BRIDGES, COLEMAN, DIAZ, IRVING, LEE, PAYNE, AND THOMAS, JJ., CONCUR.