# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2022-CA-01259-COA

JULIE PACE                                                                    APPELLANT

v.

JAMES MICHAEL PACE                                                            APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 11/21/2022 |
| TRIAL JUDGE: | HON. DEBORAH J. GAMBRELL |
| COURT FROM WHICH APPEALED: | FORREST COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | NICHOLAS ANTHONY SAKALARIOS |
| ATTORNEYS FOR APPELLEE: | MARY LEE HOLMES |
| | PAUL HARDIN HOLMES |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | AFFIRMED IN PART; VACATED IN PART - 6/11/2024 |
| MOTION FOR REHEARING FILED: | |

**BEFORE BARNES, C.J., GREENLEE AND McCARTY, JJ.**

**BARNES, C.J., FOR THE COURT:**

¶1.     This appeal originated from divorce proceedings between Julie and James Michael (Michael) Pace.  In the 2019 divorce judgment, the Forrest County Chancery Court ordered the sale of the couple's jointly owned commercial building, Pace Medical Clinic (or "subject property"), because Michael had abandoned his medical practice in 2018 and moved to California.  However, Michael returned to Mississippi in 2020 and resumed his clinical practice at the subject property, which Julie had listed for sale.

¶2.     Thus began a series of competing motions filed by the parties, many of which concerned the occupancy and sale of the subject property.  After several hearings, the chancery court entered a judgment on August 11, 2022, ordering Michael to purchase Julie's

one-half interest in the subject property and its contents; in return, Julie was to sign a quitclaim deed relinquishing her interest. The chancery court also denied Julie's request for attorney's fees from a prior contempt motion, as this issue had not been addressed in the court's prior order of contempt related to that matter, and Julie had failed to provide the court with a detailed accounting of the attorney's fees incurred.

¶3.     Julie filed a motion for rehearing or reconsideration under Rule 59 of the Mississippi Rules of Civil Procedure. Michael subsequently filed a motion for contempt because Julie refused to sign the quitclaim deed to the subject property as ordered by the court. On November 21, 2022, the chancery court denied Julie's Rule 59 motion and granted Michael's motion for contempt. Julie appeals, alleging that the court erred (I) in citing Julie for contempt; (II) by failing to enforce the 2019 final judgment and division of marital property; and (III) by refusing to award Julie attorney's fees related to the court's 2020 contempt order against Michael.[1]

¶4.     Because we find the chancery court lacked jurisdiction to grant Michael's contempt motion, we vacate the court's ruling finding Julie in contempt. We affirm the court's decision ordering that Michael buy out Julie's interest in the subject property, and we find no error in the court's denial of Julie's Rule 59 motion. We also affirm the chancery court's ruling not to award Julie attorney's fees.

## FACTS AND PROCEDURAL HISTORY

---

[1] Julie presents four issues in her brief, and we have combined Issues I and II (both concerning the contempt ruling) and Issues III and IV (both concerning the court's ruling to compel the forced buyout).

2

¶5.     Julie and Michael were married in 2005.  The couple had one child, born in 2006.

Julie filed for divorce on September 15, 2018, after discovering that Michael was having an

extramarital affair.  In the meantime, Michael had quit his medical practice and moved to

California.  The chancery court entered a final judgment of divorce on July 2, 2019.  The

chancery court ordered the parties to sell the marital home and subject property and awarded

Julie "the remainder of the cash proceeds approximately $120,000 for the . . . sale and

maintenance of the [subject property]."  Julie was also to "maintain receipts or cancelled

checks for all expenses associated with preparing the personal property, marital home and

[subject property] for sale," with Michael being "responsible for reimbursing her one half of

those expenses."

¶6.     Michael appealed the court's equitable division of the marital property.[2]  This Court

affirmed the judgment.  *Pace v. Pace*, 324 So. 3d 369, 381 (¶40) (Miss. Ct. App. 2021).  In

our ruling in *Pace*, we noted that the chancellor's final judgment had directed Julie "to make

necessary preparations" for the sale of the marital home and the subject property (i.e., Pace

Medical Clinic).  *Id*. at 380 (¶37).  During the pendency of the appeal, however, Michael

resumed his clinical practice in Mississippi; so he filed an emergency motion for an ex parte

restraining order against Julie on July 15, 2020.  Michael requested that the chancery court

bar Julie from coming onto the subject property and enjoin her "from harassing Michael, his

patients and causing further harm to Michael."

¶7.     In response, Julie asserted that Michael violated the court's 2019 judgment by

---

[2] Neither party requested a stay of the order to sell the properties pending the appeal from the original judgment.

3

"retak[ing] possession of the building and practic[ing] medicine from the building." Included in her response was a motion for a citation of contempt based on Michael's failure to pay the court-ordered child support. Julie's contempt motion also asked the chancery court

> to hold Michael in contempt for his failure to allow her to maintain and sell the building[;] to clarify that Julie has the exclusive right to use and occupancy of the building until such time as it sells[;] . . . [and] to enjoin Michael from interfering with her efforts to sell and maintain Pace Medical Clinic.

Alternatively, Julie asked the court "to require Michael to pay her . . . one-half of the current asking price for the building [(one-half being $75,000)], at which time she will convey her interest in the building to Michael." She also sought attorney's fees.

¶8. At the motion hearing on July 29, 2020, Julie's attorney proposed that if Michael wished to resume his practice at the clinic then he "should go ahead and pay [Julie] her half of the equity in the building[.]" The court agreed that if the subject property could "be utilized" for Michael's practice, then the parties should obtain "a fair market value of the building" and have Michael "pay [Julie] out of her one-half[.]" Julie noted that she "would prefer" that Michael buy her out and let her "go somewhere else" to conduct her newly formed nutrition business. However, because the appeal of the 2019 judgment was still pending before this Court, the chancery court declined to make any ruling related to the marital-property division. The court entered an order on August 11, 2020, finding Michael in contempt for his failure to pay the court-ordered child support and imposing a judgment of $14,400. The court's order did not address the parties' requests for attorney's fees.

¶9. Ten days later, Michael filed a "Motion for Contempt, Modification of Custody,

4

Psychiatric Evaluation, and Other Relief."[3]  A hearing was held on November 15, 2021, during which the chancellor inquired why the subject property had not been sold.  Julie's attorney complained that Michael was preventing a sale, stating:  "[Julie's] had realtors put signs up; we've had three potential buyers, and the signs get yanked out of the building."  Yet Michael's attorney asserted that Michael was "ready to sell it . . . right now" if Julie had a buyer.  Eventually, under the chancery court's direction, the parties agreed to an appraisal of the subject property, as well as the marital home.

¶10.    On April 26, 2022, Julie filed a "Complaint for Citation of Contempt," claiming Michael had "thwarted [her] efforts" to sell the subject property.  Julie further alleged that Michael's "taking over the building" had "interfered with her ability" to run her nutrition business from the subject property until it was sold; so he "should be required to pay or reimburse her for loss of business."  She requested that Michael reimburse her expenses in maintaining the property prior to his occupancy in July 2020.  Lastly, Julie noted the chancery court's failure to address the issue of attorney's fees in its prior order from August 2020, and she sought those "attorney's fees and court costs she incurred in attempting to collect unpaid child support."

¶11.    A hearing was held on May 3, 2022.  The chancellor noted that the subject property's appraised market value was $186,000 and that the value of the medical equipment was $24,000.  Exasperated with the parties' failure to sell the subject property, the chancellor asked the parties, "Who has got the money to buy this and let me be done with it?"  Julie

---

[3] The allegations in this motion concerned visitation and custody and are not relevant to the issues raised on appeal.

5

insisted that she had a buyer that would pay $250,000; so the chancellor ruled, "If $250,000 is tendered to the chancery clerk's office by Monday morning at noon, I am going to order [the clerk] to accept it and [Michael] to vacate the premises." Michael then offered "to pay [Julie] to . . . get her out of the clinic" and the marital home, but Julie did not agree to his offer. The chancellor issued a bench ruling that if Julie failed to produce a buyer by the following Monday, then either party wishing to keep the subject property should tender $105,000 with the chancery clerk the following day (Tuesday). No buyer appeared, however, and neither party submitted any funds to the court.

¶12. A month later, Michael filed an "Urgent Motion to Sell Real Property," requesting that the court compel Julie to execute a quitclaim deed for the subject property.[4] Julie filed a motion for reconsideration and a response to Michael's contempt motion on June 10, 2022. She sought a continuance of the matter, noting that Michael's motions "were not set in accordance with the Mississippi Rules of Civil Procedure." She further argued that neither party had pled the relief ordered by the chancery court in its bench ruling on May 3, 2022. Julie claimed that because Michael had only tendered $1,000 in the court's registry, she could not "be held in contempt for her refusal to sign a deed at this point[.]" She also asked the court to order Michael to pay her rental income at fair market value for the subject property.

¶13. A hearing was held on June 13, 2022. Julie's (new) attorney stated that Julie did not wish for Michael to buy her interest in the subject property. The chancery court entered an

---

[4] The motion also raised issues concerning the sale of the couple's marital home, but we have limited any reference to those rulings regarding the marital home unless they are relevant to our analysis of the issues raised.

6

order allowing the parties ten days "to plead any issues regarding partition, contempt, or any other relief," and the court scheduled a hearing for July 20, 2022. Michael filed a petition requesting that the court partition the real property at issue. Julie filed a contempt motion, asking the court to find Michael in contempt for his continued interference with the sale of the subject property.

¶14. At the July 20, 2022 hearing, Michael testified that he had deposited $100,000 into the chancery court's registry. Julie's position was she now wished to move her nutrition business back into the subject property "and own it with [Michael]." Alternatively, she wished to buy the property; yet she had been unable to get the money to do so. As a last resort, Julie asked the chancellor to order the subject property sold to the highest bidder but admitted she had not received any written offers for purchase of the building. Noting Julie's realtor had testified that the subject property's "realistic" value was "more in line with 200,000," the chancellor issued a bench ruling that Michael contribute an additional $10,000 into the court's registry for the personal property (medical equipment) and that Julie execute a quitclaim deed within ten days. The chancellor ordered Michael to reimburse Julie for the 2020 taxes already paid on the property and to pay the 2021 taxes. The marital home was ordered to be partitioned and "sold at the courthouse steps." The chancellor declined to award those attorney's fees Julie requested after looking at the information provided and her former 2020 order finding Michael in contempt. On August 11, 2022, the chancery court entered its final judgment, ordering (1) Michael to "buy out" Julie's interest in the subject property (by submitting $110,000 into the court's registry); (2) Michael to reimburse Julie

for the 2020 property taxes she had paid ($3,200.82); (3) Julie to execute the quitclaim deed on the subject property; (4) the marital home property to be partitioned; (5) Julie's request for attorney's fees related to its 2020 order to be denied; and (6) Michael to pay Julie $6,000.00 for her attorney's fees related to the current proceedings. The court declined to award Julie any further reimbursement for expenses she had incurred selling the subject property.

¶15. Julie filed a "Motion for Rehearing/Reconsideration pursuant to Rule 59(a)(2) of the Mississippi Rules of Civil Procedure" on August 22, 2022,[5] challenging the court's ruling denying her attorney's fees for the 2020 contempt motion and arguing the court erroneously modified its prior judgment of divorce "by denying Julie reimbursement for property expenses." She also requested the chancery court reconsider its ruling "that Julie would not be allowed to recover rent or a share of the fair market value of the commercial building from Michael" during his occupancy. Approximately one week later, Michael filed a motion for contempt, stating that although he had complied with the court's order to deposit the additional funds into the court's registry, Julie had refused to sign the quitclaim deed.

¶16. The chancery court held a motion hearing on October 31, 2022. It was noted that Julie had signed the quitclaim deed the week prior to the hearing. When asked for the reason for the two-month delay, Julie's attorney said it was because Michael had failed to pay the 2021

---

[5] Rule 59(e) requires motions to alter or amend to be filed within ten days of entry of a judgment. M.R.C.P. 59(e). Although Julie's motion was filed on the eleventh day, it is considered a timely motion because the tenth day was Sunday. *See Taylor v. Morris*, 609 So. 2d 405, 407 n.1 (Miss. 1992) (finding a Rule 59(e) motion filed eleven days after the final judgment was timely only because the tenth day fell on a Sunday).

taxes on the subject property until recently. Michael's attorney noted that the marital home had still not been sold and that Julie had "refused to do anything unless she forces us to do it." Julie's attorney also asserted that Michael had failed to provide the required notice of the contempt motion and that Julie had filed a motion for rehearing, "so she should not be held in contempt." With regard to Julie's motion for rehearing, the chancellor noted that it had not been set for a hearing but the court nevertheless decided to address all the issues raised at the hearing.

¶17. On November 21, 2022, the chancery court entered its order, finding Julie in contempt "for her failure to timely sign the deed to the [subject] property" and ordering her to pay Michael $2,500 in sanctions "for her failure to do this until the week before this hearing." The court denied "[a]ll other requests for relief" in Julie's Rule 59 motion for rehearing or reconsideration.[6] On December 8, 2022, Michael filed another contempt motion because Julie had not yet paid him the court-ordered sanction of $2,500.

¶18. Julie appeals from the chancery court's August 2022 judgment and all subsequent orders, arguing that the court erred (I) by citing Julie for contempt; (II) by modifying its 2019 final judgment and division of marital property; and (III) by refusing to award Julie attorney's fees related to her 2020 contempt motion and the subsequent judgment of contempt against Michael.[7]

---

[6] The chancery court modified its prior judgment upon receiving information from the county tax assessor that the marital property was "not subject to partition."

[7] Julie has filed an application for a stay of the judgment pending the appeal under Rule 8 of the Mississippi Rules of Appellate Procedure and deposited $3,125 (125% of the judgment sum of $2,500) into the court's registry as a supersedeas bond.

**STANDARD OF REVIEW**

¶19. Our standard of review in domestic relations cases is limited. *McGovern v. McGovern*, 372 So. 3d 138, 144 (¶18) (Miss. Ct. App. 2023). "We will affirm the chancellor's ruling if it is supported by substantial evidence unless the chancellor abused [her] discretion, clearly erred, or applied the wrong legal standard." *Id.* Questions of law are reviewed de novo. *Id.*

**DISCUSSION**

**I. Whether the chancery court erred by citing Julie for contempt in the November 2022 judgment.**

¶20. Julie contends that Michael's failure to issue a summons under Rule 81 of the Mississippi Rules of Civil Procedure robbed the chancery court of jurisdiction to address Michael's contempt motion. The Mississippi Supreme Court has held, "Because contempt proceedings are distinct actions, they require notice consistent with Mississippi Rule of Civil Procedure 81(d)." *Hanshaw v. Hanshaw*, 55 So. 3d 143, 146 (¶9) (Miss. 2011). As we recently clarified, "Although contempt proceedings in divorce cases often are filed in the same cause number and proceed with the underlying divorce case, they are held to be separate actions, requiring new and special summons under Mississippi Rules of Civil Procedure 81." *Bolivar v. Bolivar*, 378 So. 3d 433, 440 (¶25) (Miss. Ct. App. 2024) (quoting *Shavers v. Shavers*, 982 So. 2d 397, 402 (¶25) (Miss. 2008)). "An opposing party's failure to issue a Rule 81 summons may result in the chancery court losing its personal jurisdiction." *Id.* at (¶26) (quoting *Harrison v. Howard*, 356 So. 3d 1232, 1241 (¶25) (Miss. Ct. App. 2023)).

10

¶21. Michael argues that "Julie waived any objection to proper service whe[n] she appeared ready to defend the suit." Indeed, "a party 'may waive the requirements of Rule 81 by appearing at a hearing on the issue of contempt and defending the charge on its merits *without raising any objection related to service of process.*'" *Britt v. Orrison*, 323 So. 3d 1135, 1147 (¶46) (Miss. Ct. App. 2021) (emphasis added) (quoting *Wallace v. Wallace*, 309 So. 3d 104, 113 (¶40) (Miss. Ct. App. 2020)). In this instance, however, Julie's attorney expressly argued at the October 2022 hearing, "This Motion for Contempt was filed. *It was not served on Julie. It was not noticed with any notice to me.*" (Emphasis added). Therefore, we find that Julie did not waive the challenge to a proper summons under Rule 81 and that the chancery court lacked jurisdiction to rule on the contempt motion.

¶22. Accordingly, we vacate the court's ruling from its November 2022 judgment, finding Julie in contempt. Although neither party addressed the corresponding sanction award ($2,500) in their briefs, the court's lack of jurisdiction requires us to vacate the court's award as well. Because the notice issue is dispositive as to the appeal of the court's contempt ruling, we need not address Julie's other argument (Issue I from her brief) that the court's August 2022 judgment "had been stayed pending a ruling" on Julie's Rule 59 motion. *See* M.R.C.P. 62(a).[8]

---

[8] In reviewing the content of Julie's motion, we do find it questionable whether Julie's motion was a motion for a new trial (Rule 59(a)), requiring an automatic stay under Rule 62(a); or a motion for reconsideration (Rule 59(e)), allowing the trial court discretion to stay the judgment under Rule 62(b). *See McNeese v. McNeese*, 119 So. 3d 264, 275 (¶33) (Miss. 2013) (finding that because the content of the Rule 59 motion revealed it was actually a motion for reconsideration, it was not subject to an automatic stay under Rule 62(a)); *see also* M.R.C.P. Rule 62(b) (authorizing a trial court *discretion* to grant a stay for a motion to alter or amend the judgment) (emphasis added).

**II. Whether the chancery court erred in ordering the buyout of the subject property and, thus, modifying its 2019 final judgment and division of marital property.**

¶23. Because the court's 2019 final judgment ordered Julie to sell the marital properties, Julie argues that the chancery court's August 2022 judgment—ordering Michael to buy out her interest in the subject property—erroneously modified the equitable division of marital property from the 2019 judgment. She claims that this "creat[ed] an inequitable situation that deprived one party but not the other of the use of the property, while saddling that same excluded party with all of the financial responsibility for the expenses of the marital property." Julie also asserts the court's August 2022 judgment deprived her "of receiving a price determined by the free and fair market." Finally, Julie challenges the chancery court's changing of the valuation method (from "open market" to "using appraisals") and "limit[ing] the amount Julie could recover for her expenses in maintaining and selling the properties, when those expenses were not limited" in the prior judgment.

¶24. Our court affords chancellors "wide latitude in fashioning equitable remedies in domestic-relations matters." *Roley v. Roley*, 329 So. 3d 473, 491 (¶49) (Miss. Ct. App. 2021); *see also Bell v. Stevenson*, 158 So. 3d 1229, 1236-37 (¶20) (Miss. Ct. App. 2015) (recognizing a chancery court's "broad discretion over equitable remedies" in domestic matters). A trial court may also "fashion an equitable remedy if unforeseen circumstances frustrate the purpose of property division." *Shaw v. Shaw*, 985 So. 2d 346, 352 n.3 (Miss. Ct. App. 2007) (citing Deborah H. Bell, *Bell on Mississippi Family Law* § 6.12[3] (1st ed. 2005)); *see also Morgan v. Morgan*, 744 So. 2d 321, 324 (¶15) (Miss. Ct. App. 1999).

Although not precisely on point to the facts of the present case, we find our holding in *Archie v. Archie*, 337 So. 3d 698 (Miss. Ct. App. 2022), instructive to our analysis.[9] The chancellor in *Archie* granted Debbie Archie ownership of the marital home and ordered her to pay her ex-husband Amos $20,000 for his equity in the domicile. *Id*. at 700 (¶3). Because the home had been "paid off," and she could not obtain a personal loan, Debbie did not have the funds to comply with the court's order; so Debbie filed a petition to amend the judgment. *Id*. at (¶4). The chancellor then ordered that the marital home be sold "and that Amos be paid his equity out of the proceeds." *Id*. at 701 (¶7). Debbie challenged the court's modification of its original judgment and argued that the relief granted (the sale of the home) had not been pled. *Id*. at 701-02 (¶¶9-10). Because Debbie had requested that the chancellor "make it possible for her to adhere to the dictates of the chancery court[,] . . . her petition placed the entire matter of the equitable distribution of the marital estate before the chancellor." *Id*. at 702 (¶¶11-12). Finding "the chancery court had the same authority it had in the original equitable distribution," we concluded that the court "was not manifestly wrong or clearly

---

[9] The cases Julie cites to support her claim that the 2019 judgment was non-modifiable are distinguishable because they involve property settlement agreements. *See Stone v. Stone*, 385 So. 2d 610, 614 (Miss. 1980) (holding that the parties' property settlement agreement pertaining to the conveyance, maintenance, and occupancy of land were "not subject to modification because they [were] permissible subjects of contractual agreements between a husband and wife"); *Wilson v. Wilson*, 53 So. 3d 865, 869 (¶13) (Miss. Ct. App. 2011) (noting that once a couple's property settlement agreement is incorporated into a court's divorce judgment, it is "not modifiable absent fraud, duress, or a contract provision allowing for modification"). We have found one case in which the supreme court held that "an order of equitable division is a nonmodifiable judgment." *Lewis v. Pagel*, 172 So. 3d 162, 175 (¶27) (Miss. 2015) (citing *East v. East*, 493 So. 2d 927, 931 (Miss. 1986)). However, we are reluctant to rely on *Lewis* as authority that a judgment of equitable division cannot be modified, as the case cited for this authority in *Lewis* concerned an alimony award and a property settlement agreement. *See East*, 493 So. 2d at 931-33.

erroneous" in "fashion[ing] an equitable remedy" for Amos to obtain his equity in the marital property. *Id*. at 702-03 (¶¶14, 16).

¶25. Here, the chancery court noted that when the original judgment was entered, "the building had been unused," and the parties "thought it could sell." Since that time, however, "[Julie] took the building over. [Michael] showed up[,] threw her out[,] and it's been a tug-of-war since then." After Michael returned to Mississippi, the court reasoned that "the practical thing to do would be to allow him to set up a practice, and then the parties work towards hi[s] buying her out of that building[;] that makes sense." Julie's attorney agreed and proposed that Michael "go ahead and pay her her half of the equity in the building then he can have it." He also noted that Julie had attempted to sell the property for $200,000, but "[i]t did not sell." When Julie informed the chancellor that she had obtained credentials for "other mid-level practitioners under my contract to practice out of that building as well," the chancellor admonished her:

> The Court ordered you-all to get rid of the property. You said you couldn't work; [Michael] said he couldn't work. I ordered that it be sold. Neither one of you had any authority to start taking possession without coming back to this Court. Nobody did that.

The chancellor then asked Julie if she wanted to "buy [Michael] out." She replied that she "would prefer" for Michael to "buy [her] out and [she] go somewhere else." Julie had also asked the chancery court "to require Michael to pay her $75,000.00 . . . one-half of the current asking price for the building, at which time she will convey her interest[.]"

¶26. At a subsequent hearing in November 2021, the chancellor noted that this Court had affirmed the court's ruling that the properties be sold. *See Pace*, 324 So. 3d at 381 (¶40).

14

Julie's (new) attorney claimed that Julie had "worked her tail off getting realtors involved," but Michael had taken down the realty signs. The chancellor told the parties, "Get the property sold," and she appointed an appraiser agreed upon by the parties.

¶27. At the May 2022 hearing on custody, Julie's attorney mentioned that the subject property "has been listed with contracted sellers continuously." Julie asked the chancery court to order Michael to vacate the premises so she could sell the building. Recalling the discussion from the 2020 hearing, the chancellor noted Julie had expressed a willingness for Michael to buy out her interest. Although the chancery court provided Julie an opportunity to produce a buyer for the property, she failed to do so.

¶28. We find the record demonstrates that the chancery court made every attempt to enforce its 2019 judgment, ordering the parties to "[g]et [it] sold." The court also told the parties on more than one occasion that if they would not sell the marital property or come to an agreement for a buyout, then the court would "order that it be sold at the courthouse steps" for fair market value. While Michael's occupancy of the subject property may have been a hindrance at times, Julie had the property listed for almost three years without entertaining any serious offers. Furthermore, as noted, Julie had requested a buyout of her interest in the subject property as a possible alternative option in her 2020 motion. In consideration of these changes in circumstances since the chancery court's original 2019 judgment and the parties' protracted and contentious arguments over this issue, we find that the chancery court's modification of its prior judgment was an appropriate equitable remedy in this instance.

15

¶29.    Julie also claims that the court's "changing the method of valuation for these properties from using the open market, to using appraisals," was an erroneous modification of the 2019 judgment.[10]  "The valuation of property is a question of fact."  *Brown v. Brown*, 350 So. 3d 1169, 1179 (¶32) (Miss. Ct. App. 2022).  This Court has specifically held, "The fair market value of a business is a question for the trier of fact," and "we defer to the chancellor's findings of fact when supported by the evidence and not manifestly wrong." *Smith v. Smith*, 379 So. 3d 954, 967 (¶43) (Miss. Ct. App. 2024) (quoting *Cox v. Cox*, 61 So. 3d 927, 936 (¶29) (Miss. Ct. App. 2011)).  The record does not indicate that the chancery court had assigned any value to the subject property in its prior judgment.  At the July 2020 hearing, Julie's attorney admitted that the realtor had difficulty selling the subject property and had reduced the listing to $150,000; so her attorney requested "a fair market of what the actual appraisal would be for that building."   Both parties later agreed to appoint an appraiser.  The appraisal stated that the fee simple market value of the clinic was $186,000. At a subsequent hearing, Julie's realtor suggested that the value of the building was between $200,000 and $250,000.  The chancellor concluded that the "realistic value is the 200,000." Deferring to the chancellor as the trier of fact, we find no error in her valuation of the subject property.

¶30.    Julie also asks this Court to reverse and remand the chancery court's August 2022 judgment for a hearing because there was no "inventory or appraisal of the value of the medical equipment."  The court determined the value of the equipment was $20,000 based

---

[10] The record from the prior appeal indicates that Julie assigned no value to the subject property in her Rule 8.05 financial statement.  *See* UCCR 8.05.

16

on the county tax records, minus depreciation. Julie acknowledges, however, that neither party provided the court with "a firm value" for the medical equipment. Julie's attorney did note at the May 2022 hearing that the county had it "appraised at around $24,000." This Court has held, "It is incumbent upon the parties, not the chancery court, to prepare the evidence needed to clearly make a valuation judgment." *Martin v. Martin*, 282 So. 3d 703, 707 (¶10) (Miss. Ct. App. 2019). "If a party fails to provide accurate or sufficient information or cooperate in the valuation of an asset, the chancellor is entitled to proceed on the best information available to him or her." *Lageman v. Lageman*, 313 So. 3d 1075, 1080 (¶8) (Miss. Ct. App. 2021). We find no error in the court's valuation of this asset.

¶31. Lastly, we find no abuse of discretion in the chancery court's ruling to deny Julie's request for reimbursement of expenses, which Julie argued in her Rule 59 motion. *See Johnson v. Smith*, 328 So. 3d 145, 150 (¶21) (Miss. Ct. App. 2021) (noting that our Court "review[s] a chancellor's denial of a Rule 59 motion for abuse of discretion"). At the July 2022 hearing, the chancellor noted:

> In August of 2019, I ordered that [Julie] keep $120,000 for monies for upkeep on both properties. I also put in that order that there be an accounting. The best way to proceed to me today is to give me a list of all these expenses that have been incurred, so I can subtract and see if it went over, order [Michael] to pay his part. . . . [D]o I have receipts for the $120,000 that I ordered three years ago? No. Now, just give me the receipts for what she is asking for now, for the yard work, for the whatever, just give me that and let me get a calculator and get this case over.

Julie's counsel said the expenses for the subject property were "in evidence," but she did not "have an accounting for the [c]ourt today on the house" because the house had not sold yet. In its August 2022 ruling, the court "considered the expenses submitted by [Julie] for

17

reimbursement from the defendant" and found "that since the sums do not come up to the $120,000, the [c]ourt does not order any additional sums to be paid for reimbursement of expenses." The chancery court again denied the request for reimbursement at the hearing on Julie's Rule 59 motion. These itemized expenses are not in the record, and we find no error in the court's judgment denying Julie's Rule 59 motion.

¶32. Accordingly, we affirm the chancery court's decisions to order Michael to buy out Julie's interest in the subject property and to deny Julie the relief requested in her Rule 59 motion.

### III. Whether the chancery court erred by failing to award Julie attorney's fees for her 2020 contempt order seeking payment of back child support.

¶33. In Julie's July 2020 contempt motion for Michael's failure to pay child support, she requested attorney's fees "in having to defend and pursuing this action." At the motion hearing, the chancery court ordered Michael to pay $14,400, but the court made no ruling as to attorney's fees either at the hearing or in its order of contempt. When Julie later raised this issue, the court denied her request for fees related to that motion.

¶34. "Attorney's fees are awarded to make the plaintiff whole in contempt actions." *Riley v. Riley*, 196 So. 3d 1159, 1163 (¶19) (Miss. Ct. App. 2016) (citing *Wilson v. Stewart*, 171 So. 3d 522, 529 (¶21) (Miss. Ct. App. 2014)). That said, "chancellors have broad discretion to determine attorney fees[;] . . . [so] [w]e are reluctant to disturb a chancellor's discretionary determination whether or not to award attorney fees and of the amount of any award." *Chism v. Chism*, 285 So. 3d 656, 667 (¶39) (Miss. Ct. App. 2019) (quoting *Huseth v. Huseth*, 135

18

So. 3d 846, 859 (¶41) (Miss. 2014)). At the July 2022 hearing, the chancellor noted that "[t]here's no way in the world I would not have awarded attorney's fees if [Julie's attorney] had asked for them when I found the defendant to be in contempt." The chancellor determined that Julie's former counsel had "prepared the [2020] judgment, presented it to the Court," but there was "no reference whatsoever to a request for attorney's fees, a court's ruling on attorney's fees or a court holding that [issue] in abeyance." The chancellor therefore ruled:

> The Court finds that now almost two years later, to hand me receipts from prior attorneys, $1500 of which was paid based on some work in justice court, 5,000 was based on legal services -- it appeared to have been paid on July 28th, 2020.[11] The Court has no knowledge as to whether or not this was for the contempt matter, which was not addressed in this order, and the Court is going to decline that she be reimbursed $1500 for justice court representation nor $5,000 for legal fees that I don't know what they were for.

We find no error in the chancery court's reasoning, and we affirm its decision to deny Julie's request for attorney's fees.

¶35. **AFFIRMED IN PART; VACATED IN PART.**

**CARLTON AND WILSON, P.JJ., GREENLEE, WESTBROOKS, McDONALD, LAWRENCE, McCARTY, SMITH AND EMFINGER, JJ., CONCUR.**

---

[11] The receipts in the record were small paper receipts for payment, which were not itemized.